IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stanislav Astakhov, Alona Astakhova, Yevhenii Shapiro, and Anastasiia Volkova, for themselves and all others similarly situated,

*Plaintiffs*,

v.

United States Citizenship and Immigration Services, United States Department of Homeland Security, and United States of America,

*Defendants*.

Case No. _____

**CLASS ACTION COMPLAINT**

## **INTRODUCTION**

As part of the United States' commitment to providing humanitarian assistance, Congress passed legislation providing Ukrainian and Afghan parolees benefits available to refugees. This included the benefits of automatic employment authorization (known as employment authorization incident to status) and exemption from the initial $410 fee to apply for employment authorization. Notwithstanding the legislation, the United States Department of Homeland Security (DHS) and United States Citizenship and Immigration Services (USCIS) did not grant Ukrainian and Afghan parolees employment authorization incident to status and unlawfully continued to require them to pay the $410 filing fee to apply for employment authorization. On November 21, 2022, USCIS issued a news alert acknowledging that Ukrainian and Afghan parolees were entitled to the same automatic employment authorization and fee exemption as refugees. USCIS therefore stopped charging the $410 fee effective that day. However, it refused to refund the fees to Afghan and Ukrainian parolees who had already paid.

1

Plaintiffs bring this class action individually and on behalf of all other similarly situated Ukrainian and Afghan parolees who paid the $410 fee to apply for employment authorization that Defendants unlawfully charged. Plaintiffs challenge Defendants' failure to provide them employment authorization incident to status, failure to exempt them from the $410 filing fee, and request a refund of the fees already paid.

## PARTIES

1. Plaintiff Stanislav Astakhov is a Ukrainian national residing in Irvine, California. Plaintiff Astakhov was paroled into the United States on June 11, 2022. After entry into the United States, Plaintiff Astakhov submitted his application for work authorization on July 13, 2022, using Form I-765. With his application, he submitted the $410 filing fee that USCIS unlawfully charged.

2. Plaintiff Alona Astakhova is a Ukrainian national residing in Irvine, California. Plaintiff Astakhova was paroled into the United States on June 11, 2022. After entry into the United States, Plaintiff Astakhova submitted her application for work authorization on July 13, 2022, using Form I-765. With her application, she submitted the $410 filing fee that USCIS unlawfully charged.

3. Plaintiff Yevhenii Shapiro is a Ukrainian national residing in Irvine, California. Plaintiff Shapiro was paroled into the United States on May 19, 2022. After entry into the United States, Plaintiff Shapiro submitted his application for work authorization on June 7, 2022, using Form I-765. With his application, he submitted the $410 filing fee that USCIS unlawfully charged.

4. Plaintiff Anastasiia Volkova is a Ukrainian national residing in Brooklyn, New York. Plaintiff Volkova was paroled into the United States on April 24, 2022. After entry into the United States, Plaintiff Volkova submitted her application for work authorization on or about May 16, 2022, using Form I-765. With her application, she submitted the $410 filing fee that USCIS unlawfully charged.

5. Defendant United States Department of Homeland Security is an executive department of the United States and is charged with managing USCIS. DHS administers Uniting for Ukraine and Operation Allies Welcome. Through its regulations, DHS sets the fee to apply for employment authorization, and, in connection with USCIS, is responsible for the application for employment authorization.

6. Defendant United States Citizenship and Immigration Services is an agency within DHS. USCIS administers the Immigration and Nationality Act and is charged with processing the Form I-765s and collecting the relevant filing fees for applying for employment authorization.

7. Defendant United States of America, through DHS and USCIS, administers the Immigration and Nationality Act and is charged with processing the Form I-765s and collecting the relevant filing fees for applying for employment authorization.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 5 U.S.C. § 702, 28 U.S.C. 1346(a), and 28 U.S.C. § 1331. Plaintiffs' individual claims against the Defendants, as well as that of each member of the proposed class, do not exceed $10,000.

9. The Court has personal jurisdiction over all parties to this lawsuit, and venue is proper pursuant to 5 U.S.C. § 703, 28 U.S.C. § 1391, and 28 U.S.C. 1402(a).[1]

## FACTUAL ALLEGATIONS

10. The United States supports "a number of humanitarian programs and protections" as part of its commitment to "assist[ing] individuals in need of shelter or aid from disasters, oppression, emergency medical issues, and other urgent circumstances."[2]

---

[1] Plaintiffs bring their Little Tucker Act claim as an alternative basis for relief. Though Plaintiffs are not residents of the District of Columbia, venue is appropriate under the pendent-venue doctrine.
[2] *Humanitarian*, USCIS, https://www.uscis.gov/humanitarian (last visited May 19, 2023).

11. This includes humanitarian parole which enables "[i]ndividuals who are outside of the United States" to "request parole into the United States based on urgent humanitarian or significant public benefit reasons."[3]

12. Once admitted, parolees are authorized "for a temporary period of time to accomplish the purpose of the parole" and are not considered "formally admitted into the United States for purposes of immigration law."[4]

13. Since July 31, 2021, tens of thousands of Afghan and Ukrainian citizens have been paroled into the United States due to the ongoing crisis in their respective countries through humanitarian programs including, Uniting for Ukraine, Operating Allies Refuge, and Operation Allies Welcome.[5]

14. On September 30, 2021, President Biden signed into law Public Law 117-43 which provided, among other things, certain Afghan parolees with "other benefits available to refugees." Afghanistan Supplemental Appropriations Act, 2022 ("Afghan Parolee Act"), Pub. L. 117-43 § 2502 (Sept. 30, 2021).

15. In relevant part, the Afghan Parolee Act states:

> (a) IN GENERAL.—Notwithstanding any other provision of law, a citizen or national of Afghanistan (or a person with no nationality who last habitually resided in Afghanistan) shall be eligible for the benefits described in subsections (b) and (c) if—
>> (1) such individual completed security and law enforcement background checks to the satisfaction of the Secretary of Homeland Security and was subsequently—

---

[3] *Humanitarian or Significant Public Benefit Parole*, USCIS, https://www.uscis.gov/humanitarian/humanitarianpublicbenefitparoleindividualsoutsideUS (last visited May 19, 2023).
[4] *Id.*
[5] *Uniting for Ukraine*, DHS, https://www.uscis.gov/ukraine (last visited May 19, 2023); *Operation Allies Welcome*, DHS, https://www.dhs.gov/allieswelcome (last visited May 19, 2023); *Afghan Arrival Categories, Documentation, and Save Responses*, USCIS at 1 n.1 (Jan. 2023), https://www.uscis.gov/sites/default/files/document/fact-sheets/SAVE-Fact-Sheet-Afghan-Arrivals.pdf (Operation Allies Refuge was later renamed Operation Allies Welcome).

  (A) paroled into the United States between July 31, 2021, and September 30, 2022; or
  (B) paroled into the United States after September 30, 2022, and—
    (i) is the spouse or child (as such term is defined under section 101(b) of the Immigration and Nationality Act (8 U.S.C. 1101(b)) of an individual described in subparagraph (A); or
    (ii) is the parent or legal guardian of an individual described in subparagraph (A) who is determined to be an unaccompanied child under 6 U.S.C. 279(g)(2); and
 (2) such individual's parole has not been terminated by the Secretary of Homeland Security.
(b) BENEFITS.—An individual described in section (a) shall be eligible for—
 (1) resettlement assistance, entitlement programs, and other benefits available to refugees admitted under section 207 of the Immigration and Nationality Act (8 U.S.C. 1157) until March 31, 2023, or the term of parole granted under subsection (a), whichever is later

16. On May 21, 2022, President Biden signed into law Public Law 117-128 which contained nearly identical language to the Afghan Parolee Act and provided "other benefits available to refugees" to certain Ukrainian Parolees. Additional Ukraine Supplemental Appropriations Act, 2022 ("Ukrainian Parolee Act"), Pub. L. 117-128 § 401 (May 21, 2022).

17. In relevant part, the Ukrainian Parolee Act states:

(a) IN GENERAL.—Notwithstanding any other provision of law, a citizen or national of Ukraine (or a person who last habitually resided in Ukraine) shall be eligible for the benefits described in subsection (b) if—
 (1) such individual completed security and law enforcement background checks to the satisfaction of the Secretary of Homeland Security and was subsequently—
  (A) paroled into the United States between February 24, 2022 and September 30, 2023; or
  (B) paroled into the United States after September 30, 2023 and—
    (i) is the spouse or child of an individual described in subparagraph (A); or
    (ii) is the parent, legal guardian, or primary caregiver of an individual described in subparagraph (A) who is determined to be an unaccompanied child under section 462(g)(2) of the Homeland Security Act of 2002 (6 U.S.C. 279(g)(2)) or section 412(d)(2)(B) of the Immigration and Nationality Act (8 U.S.C. 1522(d)(2)(B)); and

>   (2) such individual's parole has not been terminated by the Secretary of Homeland Security.
> (b) BENEFITS.—An individual described in subsection (a) shall be eligible for—
>   (1) resettlement assistance, entitlement programs, and other benefits available to refugees admitted under section 207 of the Immigration and Nationality Act (8 U.S.C. 1157) to the same extent as such refugees, but shall not be eligible for the program of initial resettlement authorized by section 412(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1522(b)(1)).

18. Both laws explicitly state: "An individual described in subsection (a) shall be eligible for— (1) resettlement assistance, entitlement programs, and *other benefits available to refugees* admitted under section 207 of the Immigration and Nationality Act." (emphasis added).

19. One of the benefits available to refugees is employment authorization incident to status meaning "employment authorization is granted with your underlying immigration status."[6]

20. Because they are entitled to employment authorization "incident to status," refugees are eligible to work "immediately upon arrival to the United States" and are not required to fill out a Form I-765, Application for Employment Authorization, prior to working in the United States.[7]

21. Refugees are also entitled to a filing fee exemption when filing a Form I-765.[8] Thus, if refugees do submit a Form I-765, they do not have to pay the $410 filing fee.[9]

---

[6] *Form I-765, Instructions for Application for Employment Authorization,* USCIS at 1 (exp. Oct. 31, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf.
[7] *Refugees*, USCIS, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees (last visited May 19, 2023) ("[A] Form I-765. . . will be filed for you in order for you to receive an Employment Authorization Document (EAD)."); 8 C.F.R. § 274a.12(a)(3) (2022) (listing refugees as a class of aliens "authorized employment incident to status").
[8] *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 84 Fed. Reg. 62280, 62301 (Nov. 14, 2019) (referring to USCIS's "long-standing policy" of providing a fee exemption for Form I-765 for refugees).
[9] *Form I-765, Instructions for Application for Employment Authorization* at 23 (exp. Oct. 31, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-765instr.pdf.

22. Unlike refugees, parolees generally do not receive the benefit of employment authorization incident to status and must fill out the Form I-765, pay the $410 filing fee, and wait for employment authorization before beginning work in the United States.[10]

23. Under the Afghan Parolee Act, Afghan parolees are entitled to the same employment authorization benefits as refugees. This includes: (1) employment authorization incident to status immediately upon arrival; and (2) exemption from the $410 filing fee for applying for work authorization.

24. Under the Ukrainian Parolee Act, Ukrainian parolees are entitled to the same work authorization benefits as refugees. This includes: (1) employment authorization incident to status immediately upon arrival; and (2) exemption from the $410 filing fee for applying for work authorization.

25. Notwithstanding, Defendants unlawfully required Afghan and Ukrainian parolees to receive employment authorization prior to starting work and to pay the $410 fee for filing a Form I-765.[11]

26. On November 21, 2022, USCIS acknowledged the mistake. In a news alert published on the USCIS website, USCIS stated:

> Congress has recently passed laws relating to certain Afghan and Ukrainian parolees that have included language providing that parolees covered by the legislation ". . . shall be eligible for resettlement assistance, entitlement programs, and other benefits available to refugees admitted

---

[10] *Id.* at 1 ("USCIS must first approve your Form I-765 before you are eligible to accept employment in the United States."). The current version of the CFR sets the I-765 filing fee at $550. 8 C.F.R. § 106.2(a)(3) (2022). Because that fee schedule was enjoined, parolees are subject to the $410 fee set in 2016. *U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements*, 88 Fed. Reg. 402, 404 (Jan. 4, 2023); 8 C.F.R. § 103.7 (b)(ii) (2017).

[11] On November 8, 2021, the Department of Homeland Security "announced that it will exempt filing fees and streamline application processing for Afghan nationals who were paroled into the United States for humanitarian reasons on or after July 30, 2021." Press Release, *DHS Announces Fee Exemptions*, DHS (Nov. 8, 2021), https://www.dhs.gov/news/2021/11/08/dhs-announces-fee-exemptions-streamlined-processing-afghan-nationals-they-resettle. This included exempting them from the filing fee for the Form I-765, Application for Employment Authorization. *Id.*

7

> under section 207 of the Immigration and Nationality Act (8 U.S.C. 1157). . . ."
>
> Under DHS Regulations, refugees are authorized employment incident to status, and under current USCIS policy and practice, refugees are not charged a fee by USCIS for their initial Form I-765, Employment Authorization Document (EAD). Parolees, however, are not employment authorized incident to status, and must pay a fee (currently $410) for their EAD, unless the fee is waived or exempted.
>
> To implement the statutory language, "other benefits available to refugees" in the context of section 2502(b), P.L. No. 117-43 (Afghan parolees) and section 401 of Public Law 117-128 (Ukrainian parolees), *USCIS is providing the benefits of employment authorization incident to status normally accorded to refugees and a no-fee initial (and replacement of an initial) EAD to Afghan and Ukrainian parolees so that they receive the same treatment as refugees.*
>
> Effective Nov. 21, 2022, Ukrainian and Afghan parolees, and their qualifying family members, with certain classes of admission are considered employment authorized incident to parole, which means that they do not need to wait for USCIS to approve their Form I-765, Application for Employment Authorization, before they can work in the United States.[12]

27. Despite conceding that Ukrainian and Afghan parolees are entitled to the benefits of "employment authorization incident to status normally accorded to refugees and a no-fee initial (and replacement of initial) EAD," Defendants have refused to refund the fees of Ukrainian and Afghan parolees who paid the $410 fee prior to the November 21, 2022 news alert.

## CLASS ACTION ALLEGATIONS

28. Plaintiffs bring this class action under Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure.

29. Plaintiffs seek certification of the following Class:

> **Class:** All individuals or entities who paid the $410 filing fee for Forms I-765 filed by Afghan and Ukrainian parolees who were entitled to "other benefits

---

[12] News Alert, *Certain Afghan and Ukrainian are Employment Authorized Incident to Parole*, USCIS (Nov. 21, 2022), https://www.uscis.gov/newsroom/alerts/certain-afghan-and-ukrainian-parolees-are-employment-authorized-incident-to-parole (emphasis added).

available to refugees" under the Afghan Parolee Act and the Ukrainian Parolee Act.

30. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)** – The Class is so numerous that joinder of all members is impracticable. While the exact number and identity of Class Members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs estimate that the number of Class Members is in the tens of thousands.[13] The precise number and identification of the Class Members will be easily ascertainable from Defendants' records.

31. **Commonality – Federal Rule of Civil Procedure 23(a)(2)** – There are questions of law and fact common to all Class Members. Those common questions include:

(1) Whether Defendants have acted contrary to law by refusing to provide Class Members employment authorization incident to status.

(2) Whether Defendants have acted contrary to law by charging and failing to exempt Class Members from the $410 fee for filing a Form I-765.

(3) Whether Class Members have suffered harm as a result of Defendants' actions by paying the unlawful amount Defendants charged them for applying for employment authorization.

(4) Whether Defendants are entitled to keep the fees they unlawfully charged Class Members.

32. **Typicality – Federal Rule of Civil Procedure 23(a)(3)** – Plaintiffs' claims are typical of the claims of the Class and Plaintiffs have substantially the same interest in this matter as other Class Members. Plaintiffs have no interests that are antagonistic to, or in conflict, with the

---

[13] USCIS, Fiscal Year 2022 Progress Report at 9 (Dec. 2022), available at https://www.uscis.gov/sites/default/files/document/reports/OPA_ProgressReport.pdf.

interests of the other Class Members. Plaintiffs' claims arise out of the same set of facts and conduct as all other Class Members. Like other members of the Class, Plaintiffs were subject to Defendants' unlawful practice of denying them the benefit of employment authorization incident to status and charging and failing to exempt them from the $410 fee to apply for employment authorization.

33. **Adequacy – Federal Rule of Civil Procedure 23(a)(4) –** Plaintiffs will fairly and adequately protect the interests of the Class and have no interests that are antagonistic to the interests of the Class. The attorneys representing the Class are experienced in litigating class actions and matters involving similar questions of law including user fee cases against the government.

34. **Federal Rule of Civil Procedure 23(b)(1) –** Certification under 23(b)(1) is appropriate because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would impose incompatible standards of conduct for the Defendants. In addition, the prosecution of separate actions by Class Members would create a risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of the other Class Members not parties to such individual adjudications or that could substantially impair or impede their ability to protect their interests.

35. **Federal Rule of Civil Procedure 23(b)(2) –** Certification under 23(b)(2) is appropriate because Defendants have acted or refused to act on grounds that apply generally to the Class by denying Class Members employment authorization incident to status and by charging and failing to exempt them from the $410 fee for applying for employment authorization.

36. **Federal Rule of Civil Procedure 23(b)(3)**— Certification under Federal Rule of Civil Procedure 23(b)(3) is appropriate because questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members, and a class action is superior to all other available means for the fair and efficient adjudication of this controversy. There are no predominating individualized issues, and the monetary harm suffered by individual Class Members is small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## CAUSES OF ACTION

### UNLAWFUL AGENCY ACTION UNDER 5 U.S.C. § 706

37. The Plaintiffs bring this case under Section 706 of the Administrative Procedure Act which requires courts to "hold unlawful and set aside agency actions, findings and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

38. Jurisdiction under the APA exists where, as here, plaintiffs request the return of fees the government improperly collected.

39. The Afghan Parolee Act provides Afghan Parolees with "other benefits available to refugees."

40. The Ukrainian Parolee Act provides Ukrainian Parolees with "other benefits available to refugees."

41. Defendants have acknowledged that "other benefits available to refugees" includes employment authorization incident to status and exemption from the $410 employment authorization application filing fee.

42. Defendants did not provide Plaintiffs and the Class Members with employment authorization incident to status.

43. Defendants charged and did not exempt Plaintiffs and the Class Members from the $410 employment authorization application filing fee.

44. Defendants' failure to provide Plaintiffs and the Class Members with employment authorization incident to status constitutes unlawful agency action under the Administrative Procedure Act, 5 U.S.C. § 706.

45. Charging and failing to exempt Plaintiffs and the Class Members from having to pay the $410 employment authorization application filing fee constitutes unlawful agency action under the Administrative Procedure Act, 5 U.S.C. § 706.

46. Plaintiffs and the Class Members are entitled to a judgment declaring that Defendants acted unlawfully in failing to provide them with employment authorization incident to status.

47. Plaintiffs and the Class Members are entitled to a judgment declaring that Defendants acted unlawfully in charging and failing to exempt them from having to pay the $410 employment authorization application filing fee.

48.     Plaintiffs and the Class Members are entitled to restitution in the form of a return or refund of the $410 employment authorization application filing fee they were unlawfully required to pay.

### ILLEGAL EXACTION UNDER 28 U.S.C. § 1346(a)

49.     In the alternative, Plaintiffs bring this case under the Little Tucker Act, 28 U.S.C. § 1346(a), which waives sovereign immunity and "provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Aerolineas Argentinas v. United States*, 77 F.3d 1565, 1572-74 (Fed. Cir. 1996).

50.     Here, Plaintiffs and the Class Members were entitled to "other benefits available to refugees" which includes the exemption from the $410 employment authorization application filing fee.

51.     Charging and failing to exempt Plaintiffs and the Class Members from having to pay the $410 employment authorization application filing fee constitutes an illegal exaction under 28 U.S.C. § 1346(a).

52.     Plaintiffs and the Class Members are entitled to monetary relief to recover the $410 employment authorization application filing fee they were unlawfully required to pay.

### PRAYER FOR RELIEF

53.     Plaintiffs, on behalf of themselves and the Class Members, request that this Court grant the following relief:

> (1) A judgment declaring that Defendants acted unlawfully in failing to provide Plaintiffs and the Class Members with employment authorization incident to status.
>
> (2) A judgment declaring that Defendants acted unlawfully in charging and failing to exempt Plaintiffs and the Class Members from having to pay the $410 employment authorization application filing fee.

(3) Restitution in the form of a return or refund of the $410 employment authorization application filing fee Defendants unlawfully charged and required Plaintiffs and the Class Members to pay. Or, in the alternative, monetary relief to recover the $410 employment authorization application filing fee Defendants illegally exacted from Plaintiffs and the Class Members.

(4) Certification of the Class under Federal Rule of Civil Procedure 23.

(5) An award to the Plaintiffs of their costs, expenses, and attorney fees.

(6) Such other relief as the Court deems equitable and just.

Dated: May 25, 2023

Respectfully Submitted,

/s/ *Elizabeth Smith*
Elizabeth Smith (Bar No. 994263)
MOTLEY RICE LLC
401 9th St. NW, Suite 630
Washington, DC 20004
Telephone: (202) 232-5504
Facsimile: (202) 232-5513
esmith@motleyrice.com