UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANISLAV ASTAKHOV, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, <br><br> Defendants. | Civil Action No. 23-1502 (JEB) |

## MEMORANDUM OPINION

In response to the ongoing conflict in Ukraine, Congress enacted the Additional Ukraine Supplemental Appropriations Act ("Ukrainian Parolee Act") last year to assist certain Ukrainian immigrants who had been or would be paroled into the United States. Under the Act, eligible parolees are entitled to receive various benefits that would normally be available only to refugees.

Plaintiffs — four Ukrainian nationals who were paroled into the United States in 2022 — have brought this putative class action against United States Citizenship and Immigration Services, among others. They contend that the agency violated the Administrative Procedure Act and the Ukrainian Parolee Act by unlawfully charging them a $410 filing fee to apply for employment authorization. Defendants now move to dismiss the APA count and to dismiss or transfer the illegal-exaction claim to a proper venue. Agreeing with the Government on both fronts, the Court will jettison the APA cause of action and transfer the extant claim to the remaining Plaintiff's home district.

1

**I.     Background**

    A.  Legal Background

On May 21 of last year, Congress passed and President Biden signed into law the Ukrainian Parolee Act.  See Pub. L. No. 117-128, 136 Stat. 1211.  The Act applies to all Ukrainian nationals who have been paroled into the United States "between February 24, 2022 and September 30, 2023."  Id. § 401 (a)(1)(A).  Parole allows individuals who may not be admissible to temporarily enter the United States.  See USCIS, Humanitarian Parole, https://www.uscis.gov/humanitarian/humanitarian_parole [https://perma.cc/8QKV-TTNB] ("An individual who is paroled into the United States has not been formally admitted into the United States.").  Eligibility is also extended to spouses and children of individuals paroled during that time period, even if they themselves are paroled into the country after September 30, 2023.  Id. § 401(a)(1)(B)(i).  And eligibility is further extended to the "parent, legal guardian, or primary caregiver" of an unaccompanied child paroled into the United States within the time period set out above.  Id. § 401(a)(1)(B)(ii).

Once eligibility is established, these parolees are entitled to "resettlement assistance, entitlement programs, and other benefits available to refugees admitted under [8 U.S.C. § 1157] to the same extent as such refugees."  Id. § 401(b)(1).  Among the "other benefits available to refugees" that Ukrainian parolees are now eligible for is employment authorization "incident to status."  8 C.F.R. § 274a.12(a).  To put it in layman's terms, eligible Ukrainian parolees can work immediately upon arriving in the United States by dint of their immigration status.  See id. § 274a.12(a)(4); USCIS, Refugees (last visited Sept. 21, 2023), https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees [https://perma.cc/X7YR-TBF6] (explaining that refugees "may work immediately upon arrival to the United States").

Although refugees and Ukrainian parolees alike still have to file a Form I-765 to receive an Employment Authorization Document, see 8 C.F.R. § 274a.12(a), they enjoy the additional benefit of being exempt from the filing fee by regulation. See 8 C.F.R. § 106.2(a)(32)(ii)(B).

    B.  Factual Background

With this statutory and regulatory backdrop in mind, the Court proceeds to the facts. For this task, it draws those facts from Plaintiffs' Complaint and presumes them to be true. It also takes judicial notice of Defendant USCIS's website, as both sides cite to it in their filings. See, e.g., Markowicz v. Johnson, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (taking judicial notice of "information posted on official public websites of government agencies").

Plaintiffs are four Ukrainian nationals who were paroled into the United States last year. See ECF No. 1 (Compl.), ¶¶ 1–4. Stanislav Astakhov and Alona Astakhova were both paroled on June 11, 2022. Id., ¶¶ 1–2. The other two, Yevhenii Shapiro and Anastasiia Volkova, were paroled into the United States on May 19, 2022, and April 24, 2022, respectively. Id., ¶¶ 3–4. Astakhov, Astakhova, and Shapiro all currently reside in Irvine, California; Volkova, meanwhile, lives in Brooklyn, New York. Id., ¶¶ 1–4.

All four submitted a Form I-765 application for work authorization at different points in 2022, with all but one (Volkova) submitting their applications after the enactment of the Ukraine Parolee Act. Id. Notwithstanding 8 C.F.R. § 106.2(a)(32)(ii)(B), USCIS still required a fee for individuals in Plaintiffs' position at the time, so each of them also paid a $410 filing fee. Id., ¶ 25. USCIS would later announce that, in order to implement the Ukrainian Parolee Act, it would allow individuals like Plaintiffs to apply for an initial Employment Authorization Document for free. See USCIS, Uniting for Ukraine (last visited Sept. 21, 2023), https://www.uscis.gov/ukraine [https://perma.cc/2XYV-AVDN]. But that policy about-face

3

would not come until November 21, 2022, long after these Plaintiffs had paid the filing fee. Id. As for applicants like them who already paid the fee, USCIS' response has been: "tough luck." Compl., ¶ 27.

Believing that they are entitled to a refund, Plaintiffs filed this suit alleging two counts. First, they contend that USCIS acted "in excess of statutory jurisdiction" when it charged them a filing fee. Id., ¶¶ 37–48 (quoting 5 U.S.C. § 706(2)(C)). Second, and for the same reason, they posit that Defendants obtained an illegal exaction in violation of the Little Tucker Act, 28 U.S.C. § 1346(a). Id., ¶¶ 49–52. Plaintiffs request a declaratory judgment stating that the agency unlawfully charged them the filing fee and also ask for either restitution or "monetary relief" to recover the money they paid to Defendants. Id., ¶ 53. Three of the four Plaintiffs have since voluntarily dismissed their claims. See ECF No. 27 (voluntary dismissal of Astakhov, Astakhova, and Shapiro). Defendants now move to dismiss Volkova's claims, contending that the Court lacks subject-matter jurisdiction over her APA claim, she has failed to state a claim under the APA, and this Court is an improper venue for her Little Tucker Act claim. See ECF No. 20 (Defs. MTD).

**II.    Legal Standard**

Defendants' Motion to Dismiss invokes Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(3). When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The Court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff

the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

"In considering a Rule 12(b)(3) motion [to dismiss for improper venue], the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." Pendleton v. Mukasey, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (quoting Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d. 274, 276–77 (D.D.C. 2002)). "The Court, however, need not accept the plaintiff's legal conclusions as true, and may consider material outside the pleadings, including undisputed facts evidenced in the record to determine whether" venue is proper. Braun v. U.S. Dep't of the Interior, 288 F. Supp. 3d 293, 298 (D.D.C. 2018) (internal quotation marks and citation omitted). Given that it is a plaintiff's obligation to bring the action in an appropriate district, she "usually bears the burden of establishing that venue is proper." Ellis-Smith v. Secretary of Army, 793 F. Supp. 2d 173, 175 (D.D.C. 2011) (internal

quotation marks and citation omitted); see 14D Charles Alan Wright *et al*., Federal Practice & Procedure § 3826 (4th ed. 2018) ("[W]hen the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue.").

When a plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Generally, "[t]he decision whether to dismiss or transfer 'in the interest of justice' is committed to the discretion of the district court." Fam v. Bank of America NA (USA), 236 F. Supp. 3d 397, 408 (D.D.C. 2017) (citing Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983)).

**III.   Analysis**

In seeking dismissal, Defendants first argue that the doctrine of sovereign immunity bars Plaintiff's APA claim, since the APA authorizes only suits for non-monetary relief. That cause of action is also deficient, Defendants continue, because they may pursue an adequate remedy elsewhere — namely, in the Court of Federal Claims. As to Plaintiff's illegal-exaction count under the Little Tucker Act, Defendants contend that it should be dismissed for improper venue. The Court addresses each argument in turn.

   A.   Sovereign Immunity

The doctrine of sovereign immunity, confusing as it may sometimes be, begins with a simple proposition: "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). "Such a consented-to waiver of sovereign immunity must be 'unequivocally expressed' in a congressional statute." Resolute Forest Prods., Inc. v. U.S. Dep't of Agric., 219 F. Supp. 3d 69, 74 (D.D.C. 2016) (quoting Hubbard v. EPA, 982 F.2d 531, 532 (D.C. Cir. 1992) (*en banc*)). And even when a

6

court finds a statutory waiver that speaks with sufficient clarity, it still must construe such waiver narrowly.  See Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (holding that "waiver of sovereign immunity is to be strictly construed . . . in favor of the sovereign"); Trout v. Sec'y of Navy, 317 F.3d 286, 290 (D.C. Cir. 2003) ("[A]ny doubts about the scope of a waiver [are to] be resolved in favor of the narrower governmental liability.") (citation omitted).

      The waiver in question here is found in the Administrative Procedure Act.  See 5 U.S.C. § 702.  Section 702 authorizes courts to review certain agency actions, but only if the plaintiff seeks "relief other than money damages."  See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin., 38 F.4th 1099, 1105 (D.C. Cir. 2022) ("Via the APA, the Congress has provided a limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages.'").  Whether a suit is for "money damages" or non-monetary relief turns on the distinction between "specific relief and substitute relief."  Blue Fox Inc., 525 U.S. at 262.  Specific relief is not a species of money damages but instead "attempt[s] to give the plaintiff the very thing to which he was entitled," while substitute relief "normally refers to a sum of money used as compensatory relief."  Bowen v. Massachusetts, 487 U.S. 879, 895 (1988).

      The parties, unsurprisingly, disagree on how best to characterize Plaintiff's desired remedy.  In other words, is she seeking money damages — which would preclude her from proceeding under the APA — or is she instead praying for specific relief, which would be a permissible APA remedy?  On the one hand, Plaintiff correctly points out that the Supreme Court in Bowen recognized that specific relief may include "the recovery of specific property or monies."  Id. at 893 (quoting Larson v. Domestic & Foreign Com. Corp., 337 U.S. 682, 688 (1949)); ECF No. 24 (Pl. Opp.) at 7 n.5.  Plaintiff posits that this is all she wants, the recovery of specific "money that the government took from [Plaintiff] in violation of a federal statute."

7

Pl. Opp. at 7. On the other hand, simply calling the requested remedy restitution, Defendants rightly note, is not enough. See Def. MTD at 12. They thus take the position that the "crux" of Plaintiff's APA count is a request for money damages, regardless of what she calls it. Id.

Fortunately for the Court, this is not the first time this issue has come up. In America's Community Bankers v. FDIC, 200 F.3d 822 (D.C. Cir. 2000), our Circuit was faced with a nearly identical scenario. To simplify an otherwise complicated case, the plaintiff there challenged an assessment the FDIC charged plaintiff's member banks pursuant to a statute that authorized the agency to make assessments "when necessary, and only to the extent necessary" to keep "reserves at the designated reserve ratio." Id. at 825 (quoting 12 U.S.C. § 1817(b)(2)(A)(i)). The challenger argued that the agency charged its members more than what its statutory authority allowed — thus entitling them to a refund — and sought to "get their money back." Id. at 830. As USCIS does here, the FDIC retorted that the court lacked jurisdiction because the plaintiff's claim was for money damages. Id. at 829.

The Circuit sided with the plaintiff, holding that "[w]here a plaintiff seeks an award of funds to which it claims entitlement under a statute, the plaintiff seeks specific relief, not damages." Id. at 829. Since, on the plaintiff's view of the merits, the agency had "improperly collected money" from its member banks, its desired remedy (a refund) was sought not to compensate for economic loss but to "return that which rightfully belong[ed] to" the plaintiff and its members "in the first place." Id. at 830. Put differently, since the plaintiff's theory was that the relevant statutory scheme entitled it to a refund by capping the amount the agency could lawfully assess, it could seek this remedy because it constituted specific relief.

Later cases from this district share this understanding of America's Community Bankers. In Steele v. United States, 200 F. Supp. 3d 217 (D.D.C. 2016), an individual

8

challenged the IRS's decision to charge a fee to receive a preparer tax identification number (PTIN). The IRS was empowered to charge fees for "each service or thing of value provided by" it, 31 U.S.C. § 9701(a), but the plaintiffs contended that the agency exceeded this authority by charging tax preparers to obtain a PTIN. Id. at 220. The plaintiffs' theory in Steele was basically the same as that of the America's Community Bankers plaintiff: an agency assessed me a fee in excess of its statutory authority, so I am now legally entitled to restitution of the fee I paid. Finding that America's Community Bankers was "controlling," the court held that the plaintiff's requested remedy was "not money damages, and accordingly falls under the APA's waiver of sovereign immunity." Id. at 223–24. The court further concluded that the scenario there was "no different" from America's Community Bankers, as the plaintiffs were seeking only what they were "entitled [to] from the beginning." Id. at 225 (quoting America's Cmty. Bankers, 200 F.3d at 829).

Indeed, this Court has followed our Circuit's lead and has previously found that a suit for restitution of illegally assessed fees is a suit for specific relief. See Resolute Forest, 219 F. Supp. 3d at 74–78. That case involved not the FDIC or the IRS, but an industry-led board created by an order of the Secretary of Agriculture. Id. at 71. The board was authorized, in the course of carrying out its duties, to collect "[a]ssessments required under an order." Id. at 76 (quoting U.S.C. § 7416(b)) (emphasis omitted). This Court reasoned that this statutory scheme entitled the plaintiff to a refund because "the Board has a duty to collect only lawful, requisite assessments, and, conversely, [plaintiff is] entitled to the sums that they need not have paid." Id. It accordingly held that the suit there could proceed because it was covered by the APA's waiver of sovereign immunity. Id. at 78.

The Government identifies no reason why the case at hand is distinguishable from the foregoing line. As in those cases, Plaintiff here alleges that the agency (USCIS) unlawfully charged her a fee (to apply for employment authorization) and that she is now entitled to get her money back. The relevant statutes and regulations, too, look exactly the same. There is a statutory provision that empowers Defendants to charge "fees for providing adjudication and naturalization services." 8 U.S.C. § 1356(m). And there is a statute and an agency regulation that, in Plaintiff's view, qualify the agency's power to charge fees for employment authorization to individuals in Plaintiff's position. See Pub. L. No. 117-128, 136 Stat. 1211, § 401(b) (agency must extend refugee benefits to Ukrainian parolees); 8 C.F.R. § 106.2(a)(32)(ii)(B) (exempting "aliens paroled as a refugee" from fee). The logical conclusion, to borrow from a previous case, is that "[USCIS] has a duty to collect only lawful, requisite [fees], and, conversely, [Ukrainian parolees] are <u>entitled</u> to the sums that they need not have paid." Resolute Forest, 219 F. Supp. 3d at 76.

This case, therefore, once again raises the question of "whether the government can retain funds which originally belonged to [Plaintiff]" by crying sovereign immunity. America's Cmty. Bankers, 200 F.3d at 830. Binding caselaw from the Circuit and persuasive authority from the district alike provide a clear answer: no. Since Plaintiff asks only that the USCIS "return that which rightfully belonged" to her in the first place, her APA cause of action is not one for money damages and is thus not barred by sovereign immunity. Id.

Defendants make two attempts to resist this conclusion. The first is to characterize Bowen and America's Community Bankers as cases "in which a statute authorized payments to the plaintiff." ECF No. 28 (Def. Reply) at 5. This is undoubtedly true of Bowen, which dealt with withheld federal Medicaid reimbursements to the State of Massachusetts. See 487 U.S. at

10

883–85.  But it is not true of America's Community Bankers, for there was no statute that explicitly authorized refunds or that required the FDIC to pay banks at all.  See 200 F.3d at 830.  The most relevant statutory provision there was the statute that empowered the FDIC to make assessments only "when necessary, and only to the extent necessary."  Id. at 825 (quoting 12 U.S.C. § 1817(b)(2)(A)(i)).  The same is true of the key statutory provisions in Steele and Resolute Forest, both of which qualified the power of an agency to collect fees or assessments but did not authorize refunds in so many words.  The courts in those cases reasoned that the plaintiffs were legally entitled to a refund, not because a statute said so, but because the relevant statutes limited what the respective agencies could collect in fees or assessments.  The same is true here.  So much, then, for the Government's first assay.

Its second, which in some ways builds on the first, is to rely on ITServe Alliance, Inc. v. Cucinelli, 502 F. Supp. 3d 278 (D.D.C. 2020), a recent decision from a court in this district.  See Def. Reply at 6–7.  That case, admittedly analogous to this one, involved a challenge to USCIS's decision to charge sponsoring employers like plaintiff there a fee for filing certain applications for H1-B visa beneficiaries.  ITServe Alliance, 502 F. Supp. 3d at 281.  USCIS made the same sovereign-immunity argument it makes here, and the court there agreed and dismissed most of the case for lack of jurisdiction.  The ITServe Alliance court seems to have adopted Defendants' reading of the caselaw as requiring that a plaintiff complaining about illegally assessed fees point to a statutory mandate that requires a refund.  See id. at 285 (plaintiffs "point to no statute that mandates the government [to] return illegally assessed fees"); id. at 286 ("Plaintiffs do not claim entitlement to the return of excess fees under a statute.").  As explained, this theory is incorrect and does not accurately describe the statutory provisions in America's Community Bankers or the bulk of cases from this district.  The Court thus

11

respectfully disagrees and finds that the Government's second attempt fares no better than its first.

In sum, Plaintiff's APA count is not a request for monetary damages and is consequently covered by the waiver of sovereign immunity found in Section 702. The Court thus concludes that it has subject-matter jurisdiction to hear her case.

B. Other Adequate Remedy

Plaintiff, however, remains a long way from the finish line. Defendants next attack her APA count from a different angle, arguing that it fails because she can pursue an adequate remedy at law in the Court of Federal Claims. Before proceeding, a quick clarification is in order. Although the parties address this issue as part of their dispute over sovereign immunity, the existence *vel non* of an adequate remedy "is instead an element of the cause of action created by the APA." Perry Capital LLC v. Mnuchin, 864 F.3d 591, 621 (D.C. Cir. 2017). Whether Section 702 waives sovereign immunity is, accordingly, a separate and distinct question from whether there is a valid cause of action under Section 704.

To state a valid APA claim, a plaintiff must allege that "there is no other adequate remedy in a court." 5 U.S.C. § 704. "When considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." Campaign Legal Ctr. v. Fed. Election Comm'n, 466 F. Supp. 3d 141, 161 (D.D.C. 2020) (cleaned up). Examples of evidence that points to an alternative adequate remedy include "an independent cause of action" and availability to obtain "*de novo* district-court review of the challenged agency action." Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Just., 846 F.3d 1235, 1245 (D.C. Cir. 2017) (internal citation omitted). While Section

12

704 demands an adequate alternative, it does not require "relief identical to relief under the APA." Garcia v. Vilsack, 563 F.3d 519, 522 (D.C. Cir. 2009) (emphasis added). Courts must nevertheless avoid applying Section 704 in a way that defeats "the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." Bowen, 487 U.S. at 903.

The first alternative the Government points to here is a Tucker Act suit in the Court of Federal Claims. As the Federal Circuit has explained, a plaintiff can invoke the Tucker Act to bring an illegal-exaction claim. See Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law."). The Court of Federal Claims can then award Plaintiff the thing she seeks — a monetary award of the sum the Government improperly collected from her. The Court of Federal Claims, moreover, has the power to issue a declaratory judgment if such relief is "incidental and collateral to a claim for money damages." Bobula v. U.S. Dep't of Just., 970 F.2d 854, 859 (Fed. Cir. 1992). This forum, finally, has the authority to review "whether the challenged [agency action] is contrary to statute or devoid of administrative authority" to the same extent as a district court does in an APA case. Aerolineas Argentinas, 77 F.3d at 1574.

The other possible alternative, a Little Tucker Act suit, is more or less the same as the first. The only differences are that a Little Tucker Act suit must seek damages "not exceeding $10,000 in amount" and that federal district courts have "concurrent jurisdiction" over this kind of action. Smalls v. United States, 471 F.3d 186, 189 (D.C. Cir. 2006); 28 U.S.C. § 1346(a)(1). A plaintiff can invoke this Act to bring an illegal-exaction claim in either fora. See Trayco, Inc. v. United States, 994 F.2d 832, 836–37 (Fed. Cir. 1993). Either court would similarly have the authority to award monetary relief and, in certain circumstances, equitable relief. See

13

Richardson v. Morris, 409 U.S. 464, 465–66 (1973) (Little Tucker Act grants federal district courts same power and limits as Court of Federal Claims). And either court could review the challenged agency action, affording the agency as much or as little deference as it would be entitled to in an APA suit.

      To describe these alternatives is to explain why they are adequate remedies within the meaning of Section 704. While neither the Tucker Act nor the Little Tucker Act provides "an independent cause of action" — they are jurisdictional statutes, after all — they do provide "an alternative review procedure." CREW, 846 F.3d at 1245. Both provide Plaintiff a judicial forum for her illegal-exaction claim and, consequently, for review of the challenged agency action. What is more, these alternatives provide for review of Defendants' allegedly unlawful conduct that is no different from district-court review in an APA case. Cf. El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health & Hum. Servs., 396 F.3d 1265, 1270 (D.C. Cir. 2005) ("Congress did not intend to permit a litigant challenging [agency action] . . . to utilize simultaneously both [an alternative remedy] and the APA.") (internal citation omitted). Indeed, the Little Tucker Act alternative offers Plaintiff the same exact forum as an APA action, — *viz.*, a federal district court. The Tucker Act option, meanwhile, allows Plaintiff to begin in an Article I court and can eventually result in *de novo* review by the Federal Circuit, an Article III court. See, e.g., Nat'l Veterans Legal Servs. Program v. United States, 968 F.3d 1340, 1349 (Fed. Cir. 2020) ("We review *de novo* the [Court of Federal Claim's] statutory interpretation.").

      That is not all, however. Both of these options provide Plaintiff what she desires most — a monetary award refunding the fees she paid. See Compl., ¶ 53 (asking for "[r]estitution in the form of a return or refund of the $410" fee); Nat'l Veterans, 968 F.3d at 1348 ("When the government 'has the citizen's money in its pocket,' the Tucker Act permits suit 'to recover the

14

money exacted.'") (quoting Aerolineas Argentinas, 77 F.3d at 1573). Either alternative here is accordingly adequate for the additional reason that it gives Plaintiff the opportunity to get the relief she seeks. Cf. ITServe Alliance, 502 F. Supp. 3d at 288 (explaining that Federal Circuit sees Tucker Act action for damages as "presumptively an 'adequate remedy' for § 704 purposes") (quoting Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed. Cir. 2005)).

Plaintiff sees things differently, but none of her responses sways the Court. She seems to believe, for instance, that an alternative has to be agency specific to be "adequate" under Section 704. See Pl. Opp. at 14 ("There is no special statutory review scheme — like [the Fair and Equitable Tobacco Reform Act] or the Clean Air Act."). Nothing in the text of the APA, however, requires that the alternative remedy be particular to an agency. Section 704 points to adequacy alone as the standard by which to measure proposed alternatives to an APA remedy. The caselaw does the same, which explains why the Circuit in CREW found that FOIA, no one's idea of an agency-specific statute, was an adequate remedy in some circumstances. See 864 F.3d at 1245–46.

Gaining no traction on that ground, Plaintiff next argues that the proposed alternatives are not adequate because neither forum can provide a judgment declaring the (now abandoned) USCIS policy unlawful. See Pl. Opp. at 11–13. It is true that neither forum can provide equitable relief "absent a concurrent colorable claim for monetary recovery." Simanonok v. Simanonok, 918 F.2d 947, 952 (Fed. Cir. 1990). But that limit would not necessarily prevent the Court of Federal Claims or another district court from issuing a declaratory judgment in this case. After all, a judgment declaring Defendants' action unlawful would be "incidental of and collateral to" the monetary judgment that Plaintiff would obtain should she prevail on her

15

leading illegal-exaction cause of action. Bobula, 970 F.2d at 859 (quoting 28 U.S.C. § 1491(a)(2)).

But even if Plaintiff is right and no declaratory relief is available to her in these fora, the alternatives would still be adequate. That is because a monetary award for Plaintiff would necessarily be "predicated on some finding of a legal error or wrongdoing by the agency." ITServe Alliance, 502 F. Supp. 3d at 288. She could therefore "achieve everything [she] seek[s] by persuading the Court of Federal Claims that [she is] correct on the merits, thereby securing a favorable precedent through which to extract future . . . payments." Desert Sunlight 250, LLC v. Lew, 169 F. Supp. 3d 91, 98 (D.D.C. 2016). True, in the absence of a declaratory judgment, USCIS could resume charging the challenged fee to Ukrainian parolees other than Plaintiff. See Pl. Opp. at 12–13 (making this point). Yet to take up that already-abandoned practice, Defendants would have to expose themselves to future litigation — perhaps even to future disputes about sovereign immunity — and potential damages awards of millions of dollars. In effect, then, "one can rest assured the agency will stop assessing the . . . fees about which Plaintiff[] complain[s]" should she prevail. ITServe Alliance, 502 F. Supp. 3d at 289. Plaintiff, in other words, would be able to recover the fees she paid and would secure precedent that would likely have the practical consequence of forcing Defendants to never charge these fees again.

These alternatives may not be perfect, but they are certainly "adequate" enough to give Plaintiff what she is asking for. See 5 U.S.C. § 704. Having so concluded, the Court will dismiss Plaintiff's APA count.

C. <u>Venue</u>

All that is left is Plaintiff's illegal-exaction count under the Little Tucker Act, which Defendants maintain should be dismissed for improper venue. <u>See</u> Def. MTD at 14–15. They assert that this remaining claim is worth over $10,000 and so must be brought in the Court of Federal Claims. <u>Id.</u> at 15 ("[W]hen the damages sought exceed[] $10,000, the Tucker Act vests exclusive jurisdiction with the Court of Federal Claims."). If it is not worth more than $10,000, Defendants continue, it should still be dismissed because Little Tucker Act causes of action like this one must be brought in the judicial district where Plaintiff resides. <u>Id.</u> Plaintiff retorts that this case is not worth over $10,000 and that this Court can exercise what it calls "pendent venue" over her final count. <u>See</u> Pl. Opp. at 18.

The Court agrees with Defendants' overall conclusion that venue is improper. As things currently stand, this is a one-count, one-plaintiff Little Tucker Act action. No class has yet been certified, as Plaintiff points out, so the amount of money at issue is the $410 she herself paid. <u>See</u> Pl. Opp. at 19. As the value of this suit is thus well under $10,000, it can be brought in either the Court of Federal Claims <u>or</u> federal district court. <u>See</u> <u>Charlton v. Donley</u>, 611 F. Supp. 2d 73, 75 (D.D.C. 2009) ("For non-tort claims against the government not exceeding $10,000 in damages[,] . . . the Little Tucker Act vests concurrent jurisdiction in the Court of Federal Claims and in the United States district courts.").

The Government is right, though, that a Little Tucker Act suit like this one — if it is to be brought in federal district court at all — must be brought "in the judicial district where the plaintiff resides." 28 U.S.C. § 1402(a)(1). The only remaining Plaintiff lives in the Eastern District of New York. <u>See</u> Compl., ¶ 4. That district court, not this one, is therefore the proper venue in which to bring what is left of this suit. And regardless of whether pendent venue is a

17

valid doctrine, but see SEC v. Johnson, 650 F.3d 710, 714–15 (D.C. Cir. 2011) (rejecting "co-conspirator theory of venue" in securities context), Plaintiff's objection fails now that the APA count has been dismissed.  Simply put, there is no anchor cause of action that would allow the Court to exercise pendent venue over the Little Tucker Act count.

When venue is improper, the Court must dismiss the suit or, "if it be in the interest of justice, transfer [it] to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  Although the decision to transfer or dismiss is committed to the discretion of the district court, the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal.  See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466–67 (1962).  Transfer is generally appropriate, moreover, when "substantive issues still remain in dispute."  Beckford v. Esper, 2018 WL 4778930, at *2 (D.D.C. Oct. 3, 2018).  Having agreed with Plaintiff on the value of this case at this point and recognizing that the merits of her Little Tucker Act count remain in dispute, the Court concludes that it is in the interest of justice to transfer the case to the Eastern District of New York.  While the Court of Federal Claims is also a possible destination, Plaintiff has voiced her objections to proceeding there.  As a result, New York it is.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss Count I and will send Count II to the Eastern District of New York.  A separate Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  October 5, 2023