UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
ANASTASIIA VOLKOVA, for herself
and all others similarly situated,

          Plaintiff,

   -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY, and
UNITED STATES OF AMERICA,

          Defendants.

----------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 23-CV-7565-FB-LB

*Appearances:*
*For the Plaintiff:*
WILLIAM H. NARWOLD
Motley Rice LLC
20 Church Street, 17th Floor
Hartford, Connecticut 06103

*For the Defendants:*
KATHLEEN A. MAHONEY
Assistant United States Attorney
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      On March 14, 2024, Chief Magistrate Judge Bloom entered a report and recommendation ("R&R") recommending that the plaintiff's motion for class certification be granted. The defendants timely objected but the Court agreed to defer ruling on those objections while the parties pursued settlement. Having been advised that they were unable to resolve their dispute, the Court now addresses the

issue of class certification *de novo*. *See* Fed. R. Civ. P. 72(b)(3).[1] For the following reasons, the Court grants the motion with a modified definition of the class to be certified.

# I

Anastasiia Volkova fled to the United States after her home country of Ukraine was invaded by Russia. She was paroled into this country on April 24, 2022, and applied for a work permit on May 16, 2022, paying the $410 fee required by United States Citizenship and Immigration Services ("USCIS") at the time.

Less than a week after Volkova paid the fee, President Biden signed the Additional Ukraine Supplemental Appropriations Act ("AUSAA"), Pub. L. 117-128, 136 Stat. 1211 (2022), which makes Ukrainians paroled into the United States between February 24, 2022, and September 30, 2023, eligible for "resettlement assistance, entitlement programs, and other benefits available to refugees." *Id.* § 401(b)(1). One of those "other benefits" is automatic authorization to work in the United States. *See* 8 C.F.R. § 274a.12(a)(3). Refugees must still obtain an

---

[1] The plaintiff argues that many of the defendants' specific objections were not presented in their initial submission to the Court. "Even in the absence of objections [to an R&R], a district court may, in its discretion, conduct *de novo* review." *In re Holocaust Victim Asset Litig.*, 528 F. Supp. 2d. 109, 116 (E.D.N.Y. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 154 (1985)). Because, as described in the body of this memorandum and order, circumstances have materially changed since the R&R was entered, the Court opts to exercise that discretion here.

Employment Authorization Document ("EAD"), *see id.*, but USCIS has a longstanding policy of not charging them a fee for the application process.

On November 21, 2022, USCIS announced that it would apply that policy to Ukrainian parolees in accordance with the AUSAA. Although the agency stopped charging the fee on that date, it did not immediately take any steps to refund fees already paid. Volkova sued to recover the $410 she paid prior to the AUSAA's enactment. In addition to asserting her own claim, she sought to represent a class of other Ukrainian parolees.

Defendants did not initially oppose class certification and, as noted, Chief Magistrate Judge Bloom recommended that Volkova's proposed class be certified. However, a month after the R&R was issued, USCIS launched a refund program under which qualifying Ukrainian parolees who paid the $410 fee can apply online for a refund. In addition to announcing the program on its website, USCIS sent emails and letters to more than 20,000 Ukrainian parolees (approximately 95% of those it deemed eligible for a refund). It sent a second round of emails and letters in August and September of 2024, and has, as of February 10, 2025, granted more than 16,000 refund applications. The program is ongoing.

## II

"To maintain a class action, plaintiffs must [first] demonstrate that '(1) the

3

class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(a)). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).  The requirement relevant here is found in Rule 23(b)(3), which provides that the district court must "find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Although the parties were unable to fully resolve their differences, their settlement negotiations have considerably focused the issues in dispute.  Volkova acknowledges that the policy announced on November 21, 2022, sets the latest possible end date delimiting the class because Ukrainian parolees were not charged the $410 fee after that date.  She further acknowledges that USCIS has redressed the injury of at least those who paid the fee but received a full refund.  Thus, she now defines the proposed class as follows:

4

> All individuals or entities who paid the $410 filing fee for applications on Form I-765 for initial employment authorization documents filed by Ukrainian parolees between February 24, 2022 and November 22, 2022, who were entitled to "other benefits available to refugees" under the Additional Ukrainian Supplemental Appropriations Act, 2022, Pub. L. No. 117-128 § 401, and have not received their refund in the full amount of the fee charged.

Pl.'s Mem. of Law (Jan. 10, 2025) at 15.

For their part, the defendants do not dispute that the proposed class—which includes more than 20,000 individuals—is sufficiently numerous. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members."). Nor do they dispute that there are questions common to the class. The Court agrees that the questions posed by Volkova—"(1) whether certain Ukrainian parolees [i.e., those paroled into the United States between February 24, 2022, and September 30, 2023, and their spouses, children, parents, legal guardians, or primary caregivers] were exempt from EAD filing fees under the Act because refugees are exempt from the fee on their first EAD application; and (2) whether [those parolees who paid the fee] are entitled to a refund," Pl.'s Mem. of Law (Feb. 25, 2025) at 3-4—satisfy the commonalty requirement. Indeed, her counsel is to be commended for not falling into the common trap of relying on broad questions untethered to the named plaintiff's claim. *See Dukes*, 564 U.S. at 350 ("[Commonality] does not mean merely that [the class

members] have all suffered a violation of the same provision of law. . . . Their claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Rather, the defendants' objection to class certification focuses on Volkova's adequacy as a representative of the proposed class. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (alterations and internal quotation marks omitted).[2] The defendants argue that USCIS's refund program creates three distinct groups within Volkova's proposed class: (1) parolees who paid the $410 fee between February 24, 2022, and May 21, 2022 (the date the AUSAA was signed into law); (2) parolees who paid the fee between May 21, 2022, and November 22, 2022, who have not received a refund; and (3) individuals and entities who paid the fee but are not "parolees." They then argue that Volkova is a member of only the first group and, therefore, cannot

---

[2]The adequacy inquiry also considers potential conflicts of interest and class counsel's competence. *See Amchem Prods.*, 521 U.S. at 625 & n.20. No such obstacles to certification are apparent in this case.

adequately represent the second or third.[3]

The Court agrees. Although Volkova dismisses defendants' groupings of class members as "manufactur[ed]," Pl.'s Mem. of Law (Feb. 25, 2025) at 2, 4, they reflect the reality created by the refund program. Moreover—and crucially for purposes of class certification—they present three different legal challenges to USCIS's decision not to refund the fee in a particular case. The first group calls into question USCIS's position that parolees who paid the fee before May 21, 2022, are not entitled to a refund because the AUSAA did not take effect until that date. The second, its position that the only reason eligible parolees did not receive a full refund was "because they failed to apply despite being notified on multiple occasions," Defs.' Mem. of Law (Feb. 10, 2025) at 8. The third, its position that only parolees are entitled to a refund.

It is not the Court's role to evaluate the merits of those positions at this stage.

---

[3] The defendants could just as easily have argued that Volkova's claim is not "typical" of all those she seeks to represent. *See Amchem Prods.*, 521 U.S at 626 n.20 ("The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." (alterations and internal quotation marks omitted)). For the sake of consistency, the Court treats the question as one of adequacy but would reach the same conclusion regardless of terminology.

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). It is sufficient to say that Volkova's claim does not present any question regarding the efficacy of the refund program because her inability to participate in it had nothing to do with lack of notice, unreasonable documentation requirements, or any similar shortcoming. Similarly, USCIS's decision not to refund fees paid by non-parolees is not at issue because Volkova alleges that she *is* a parolee and paid the fee herself. *See* Compl. ¶ 4.

By contrast, the defendants concede that Volkova, who paid the fee on May 16, 2022, is a member of the first group. Her claim very much depends on whether the AUSAA requires USCIS to retroactively refund fees collected from Ukrainian parolees prior to its effective date. She is, therefore, an adequate representative (and a typical member) of that class.

Redefining the class reduces its size but not below the 40-member threshold.[4] Whether the AUSAA requires USCIS to refund fees paid between February 22, 2022, and May 21, 2022, remains a live issue common to the redefined class and "capable of classwide resolution." *Dukes*, 564 U.S. at 350. Volkova's claim may

---

[4]The exact figure is not in the record but a USCIS official certified that 21,141 Ukrainian parolees paid the fee between February 11, 2002, and November 21, 2022, and that 21,084 individuals paid it between May 21, 2022, and November 21, 2022. *See* Decl. of Katherine J. Lotspeich (Apr. 15, 2024).

8

present other issues, of course, but the common issue predominates. The refund program cannot resolve that issue, making a class action a superior method for adjudicating it.

A final note: Volkova's proposed class is defined in terms of parolees "who were entitled to 'other benefits available to refugees' under the [AUSAA.]" Pl.'s Mem. of Law (Jan. 10, 2025) at 15. Unlike date restrictions and other objective criteria, who exactly is entitled to relief is, almost by definition, a disputed issue in any class action. Although counsel may have used the language simply as shorthand for statutory criteria not at issue, its inclusion risks creating a disfavored "fail-safe class"—"a class that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) (internal quotation marks omitted). Such classes cause problems because they "require an adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation." *Ruiz v. Citibank, N.A.*, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x 39 (2d Cir. 2017). The usual remedy is to omit, if possible, the circularity. *See McCaster*, 845 F.3d at 800 ("[T]he problem of a fail-safe class can and often should be solved by refining the class definition rather than by flatly denying class certification on that

basis." (internal quotation marks omitted)).

## III

Accordingly, Volkova's motion for class certification is granted. The definition of the class is modified as follows:

> All Ukrainian parolees who paid the $410 filing fee for applications on Form I-765 for initial employment authorization documents between February 24, 2022, and May 21, 2022.

**SO ORDERED.**

                                                                _/S/ Frederic Block_____
                                                                FREDERIC BLOCK
                                                                Senior United States District Judge

Brooklyn, New York
April 14, 2025