UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------x

ANASTASIIA VOLKOVA, for herself
and all others similarly situated,

              Plaintiff,

     -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY, and
UNITED STATES OF AMERICA,

              Defendants.

----------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 23-CV-7565-FB-LB

*Appearances:*
*For the Plaintiff:*
WILLIAM H. NARWOLD
Motley Rice LLC
20 Church Street, 17th Floor
Hartford, Connecticut 06103

*For the Defendants:*
KATHLEEN A. MAHONEY
Assistant United States Attorney
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Plaintiff, Anastasiia Volkova, sues to recover the $410 fee she paid to

United States Citizenship and Immigration Services ("USCIS") when she applied

for a work permit. She represents a class, previously certified by the Court,

consisting of "[a]ll Ukrainian parolees who paid the $410 filing fee for applications

on Form I-765 for initial employment authorization documents between February

24, 2022, and May 21, 2022." *Volkova v. United States Citizenship & Immigr.*

*Servs.*, 2025 WL 1096918, at *4 (E.D.N.Y. Apr. 14, 2025).

USCIS now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that the fee was lawfully collected.  For the following reasons, the motion is denied.

**I**

The factual background of this case is set forth in the Court's class certification order. To summarize:

Volkova, a citizen of Ukraine, fled her home country following the Russian invasion of February 22, 2022.  She was paroled into the United States on April 24, 2022, and applied for a work permit on May 16, 2022. She paid the $410 application fee charged by USCIS at that time.

Less than a week later, President Biden signed the Additional Ukraine Supplemental Appropriations Act ("AUSAA"), Pub. L. 117-128, 136 Stat. 1211 (2022), which provides assistance to Ukrainians paroled into the United States between February 24, 2022, and September 30, 2023. In addition to "resettlement assistance" and "entitlement programs," it makes these parolees eligible for all but one of the "other benefits available to refugees admitted under section 207 of the Immigration and Nationality Act (8 U.S.C. 1157) to the same extent of such refugees." *Id.* § 401(b)(1).

One of the "other benefits" available to refugees—and, therefore, to Ukrainian parolees—is automatic authorization to work in the United States. *See* 8 C.F.R. § 274a.12(a)(3). Refugees must still obtain an Employment Authorization Document ("EAD"), *see id.*, but USCIS has a longstanding policy of not charging them a fee for the application process.[1] On November 21, 2022, USCIS announced that it would apply the policy to Ukrainian parolees in accordance with the AUSAA and stopped charging the fee on that date. It did not initially take any steps to refund fees already collected.

As a result, Volkova filed suit in the District of the District of Columbia. Her complaint alleged that by requiring her to pay the $410 fee, USCIS (1) violated the Administrative Procedure Act ("APA"), and (2) effected an "illegal exaction" recoverable under the Little Tucker Act, 28 U.S.C. § 1346(a). Judge Boasberg dismissed the APA claim and transferred the case to the Eastern District of New York as the proper venue for the Little Tucker Act claim.

While the case was pending, USCIS announced that it would begin refunding fees paid between May 21, 2022 (the date the AUSAA was signed into law) and November 21, 2022. It has refused, however, to extend that offer to those who, like

---

[1]The policy was formalized in a regulation in 2024. *See* U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 89 Fed. Reg. 6393 (Jan. 31, 2024) (codified at 8 C.F.R. § 106.3(b)(9)(iii)).

Volkova and the class she represents, were paroled into the United States on or after February 24, 2022, but paid the $410 fee before May 21, 2022.

After implementing the refund program, USCIS argued that Volkova's proposed class action was no longer necessary. The Court disagreed, holding that it satisfied the numerosity, community, and typicality requirements of Federal Rule of Civil Procedure 23; that Volkova was an adequate representative of the class of Ukrainian parolees who paid the fee between February 24, 2002, and May 21, 2022; and that the central issue in the case was common to the class and "capable of classwide resolution." *Volkova*, 2025 WL 1096918, at *3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Notice to the class was sent out on March 5, 2026; seventy-four requests to be excluded from the class were received before the opt-out period expired on April 16, 2026.

## II

The issue supporting class certification—"Whether the AUSAA requires USCIS to refund fees paid between February 24, 2022, and May 21, 2022," *Volkova*, 2025 WL 1096918, at*3—forms the basis of USCIS's motion for summary judgment. It argues that the question must be answered in the negative as a matter of logic: The Little Tucker Act waives sovereign immunity for claims that an agency collected money "in contravention of the Constitution, a statute, or a

regulation." *Norman v. United States*, 429 4th 1081, 1095 (Fed. Cir. 2005). Since the AUSAA did not take effect until May 21, 2022, collection of the fee prior to that date cannot have contravened it.

In fact, the issue is more nuanced. "[I]t is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect." *I.N.S. v. St. Cyr*, 533 U.S. 289, 316 (2001). Nevertheless, "retroactive statutes raise particular concerns." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 265. In *Landgraf*, the Supreme Court announced "a requirement that Congress first make its intention clear [to] ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id.* at 267.

Thus, "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Id*. at 280. If not, "the court must determine whether the new statute would have retroactive effect." *Id*. If so, a "traditional presumption" against applying a statute retroactively applies "absent clear congressional intent favoring such a result." *Id.*

5

Whether the AUSAA applies retroactively under those standards appears to be an issue of first impression. In the Court's view, the question can be resolved at the first step. The AUSAA defines the category of eligible Ukrainians as those "paroled into the United States between February 24, 2022, and September 30, 2023." § 401(a)(1)(A). It does not explicitly impose *any* additional limitation on that category. The Court must assume that "Congress intended that language which it chose to employ actually was to have meaning." *Community Bank, N.A. v. Riffle*, 617 F.3d 171, 175 (2d Cir. 2010) (internal quotation marks omitted)).

It is possible, of course, that Congress intended to create a class of beneficiaries who were paroled into the United States after February 24, 2022, *and* who did not apply for a work permit until after the AUSAA took effect, but the second qualifier is completely arbitrary. Congress surely knew that most Ukrainian parolees would have sought a work permit shortly after arriving in the United States; it would be strange for Congress to want to punish those parolees for failing to predict that they should instead have bided their time in the hope that a new law would eventually entitle them to do so without paying a fee.

By choosing February 24, 2022, as the starting date, Congress clearly intended to provide assistance to Ukrainians fleeing the Russian invasion that had begun two days earlier. There is no corresponding reason for it to have excluded

6

some of those beneficiaries based on the fortuity of the time it took to enact legislation responding to the emergency.[2]

Even if the Court were to conclude that the AUSAA were ambiguous as to its scope, it would reach the same conclusion at the second step of *Landgraf*'s analysis. "[D]eciding when a statutes operates 'retroactively' is not always a simple or mechanical task." *Landgraf*, 511 U.S. at 268. Quoting Justice Story, the Supreme Court explained that a statute is truly retroactive only if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 269 (quoting *Soc. for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (No. 13,156) (C.C.N.H. 1814)).

Two considerations lead the Court to the conclusion that the AUSAA does not meet this standard for retroactivity. Although not limited to such cases, the strongest argument for the presumption against statutory retroactivity involves "new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271.

---

[2]USCIS further argues that prior to the passage of the AUSAA, the decision to waive the $410 fee was a matter of agency discretion. The statutory text is again dispositive. Congress conferred "other benefits" available to refugees without regard to whether those benefits were created by statute, regulation, or agency policy.

This is particularly true in "cases involving private rights, where it is particularly undesirable—unfair even—to undermine good-faith reliance on established legal rules." *City of New York v. Permanent Mission of India to United Nations*, 618 F.3d 172, 195 (2d Cir. 2010).

The AUSAA does not disrupt contract or property rights, and the only new obligation falls on USCIS, not a private citizen. Since Congress regularly readjusts the duties of federal agencies, the presumption against retroactivity "is less likely to reflect the intent of a reasonable legislator." *Id.*

To be sure, the Second Circuit has held that an adverse effect on governmental entities "is not independently sufficient to negate the antiretroactivity presumption." *Id.* at 196. "But when it is combined with other factors that suggest that the typical costs of retroactivity are not at stake, it is germane." *Id.* In *City of New York*, the circuit court concluded that "while there is perhaps some unfairness to the City when the federal government retroactively declares property taxes imposed by the City against foreign countries to be null and void, this unfairness inheres in the federal government's unquestioned supremacy in the management of foreign relations." *Id.* Congress has a similar "unquestioned supremacy" over federal agencies.

This case has another factor in common with *City of New York*. Backward-

looking statutes "may 'serve entirely benign and legitimate purposes,' such as responding to emergencies, correcting mistakes, preventing attempts to undermine the transition to new legal rules, or simply giving comprehensive effect to a desirable policy change." *Id.* at 195 (quoting *Landgraf,* 511 U.S. at 267-68). The AUSAA was clearly a response to an emergency and, as explained above, there is no reason to think that Congress did not intend to give "comprehensive effect" to its response. The gap between February 24, 2022, and May 21, 2022, reflects nothing more than the reality that it takes Congress time to pass even emergency legislation.

### III

For the foregoing reasons, the Court concludes that the AUSAA was intended to make *all* Ukrainians paroled into the United States between February 24, 2022, and September 30, 2023, eligible for the same fee waiver that USCIS makes available to refugees as a matter of agency policy. Accordingly, the motion for summary judgment is denied.

/S/ Frederic Block

FREDERIC BLOCK

Senior United States District Judge

Brooklyn, New York

May 20, 2026